BARNARD REALTY CO., RESPONDENT, *v.* CITY OF BUTTE
ET AL., APPELLANTS.

(No. 3,446.)

(Submitted January 5, 1915.   Decided January 15, 1915.)

[145 Pac. 946.]

*Constitution—Mines and Mining Claims—Taxation—Surface Ground—Independent Value—Evidence—Insufficiency—Illegal Assessment—Injunction.*

Mines and Mining Claims—Taxation—Constitution—Surface Ground.
    1. Under section 2, Article XII of the Constitution, and section 2500, Revised Codes, before the land embraced in a mining claim becomes subject to taxation at a valuation greater than the price paid the government therefor, the taxing officers must ascertain, and they have the burden of showing when their authority is questioned, that the surface ground, or some portion thereof, is used for other than mining purposes and has an independent value for such purpose.

Same—Surface Ground—Independent Value—Evidence—Insufficiency.
    2. Evidence that land embraced in a mining claim, by reason of its location within the limits of a city had an independent value for town-site purposes, without a showing that it was being used for such a purpose; that streets and sewers had been extended over it and other improvements made thereon for the accommodation of adjoining property holders, without the consent of the claim owner, however, who testified that it was his intention to work the property for the silver it was known to contain, was insufficient to warrant taxation of the land in excess of the limit prescribed in section 2, Article XII of the Constitution.

Illegal Taxation—Injunction—Proper Remedy.
    3. Where the taxing authorities levy a tax not authorized by law, or upon property not subject to be taxed, their action is without jurisdiction and wholly void, and the remedy by injunction is available; in such a case it is not necessary that the owner first exhaust the remedy provided by amended section 2743, Revised Codes (Laws 1909, Chap. 135), by appearing before the county board of equalization and making timely objection to the assessment.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by the Barnard Realty Company against the City of Butte and Daniel Shovlin, City Treasurer. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

*Messrs. Alexander Mackel, Wm. F. Davis* and *N. A. Rotering,* for Appellants, submitted a brief; *Messrs. Mackel* and *Davis* argued the cause orally.

*Mr. E. B. Howell* and *Mr. Edwin M. Lamb,* for Respondent, submitted a brief; *Mr. Lamb* argued the cause orally.

The county assessor did not follow the procedure outlined in section 2, Chapter 135, Laws of 1909. Instead of revising the assessment list furnished by the Barnard Realty Company, he left intact the assessment of the full Barnard placer, and made an entirely new assessment of a portion thereof to "A. W. Barnard." The notice provided by the statute calling attention to the change was not addressed to the Barnard Realty Company, which had furnished the list and was the owner of the property assessed, but was directed to "A. W. Barnard," who had not furnished the list and was not the owner of the property assessed. If the requirements of the statute were not followed, the action of the assessor was a nullity. "A legal assessment is the foundation of a legal tax. The assessor derives his authority from the statute, and in order to give him jurisdiction to act, or to clothe his official acts with any potency or efficacy, the provisions of the statute must be particularly followed." (*Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 146, 3 Pac. 134; *Clark* v. *Maher,* 34 Mont. 391, 87 Pac. 272.) "An assessment made as directed by law is an indispensable basis for the support of the tax that may be levied upon it." (*People* v. *Hastings,* 29 Cal. 450; 27 Am. & Eng. Ency. of Law, 660.)

The attempt of the assessor to assess the ground in controversy for other than mining purposes was wrongful. (*Murray* v. *Hinds,* 30 Mont. 466, 76 Pac. 1039.)

No use is shown, by the defendants, of this ground other than for mining purposes. A use by others for dumping ground would not be sufficient. A right of way for telephone lines or electric light lines or sewer to convenience the public would not be such a use by the plaintiff as is meant by the term, "so used for other than mining purposes," in the Constitution. In such a case as this, the burden is upon the appellant to show the lands sought to be taxed have an independent value by reason of profitable use for some other purpose, and that the city is entitled to impose the tax. (*Hale* v. *Jefferson County,* 39 Mont. 137, 101

Pac. 973.)   This decision seems to squarely meet the facts in this case, for there the improvements upon the mining claim—the water ditch—could be used for irrigating agricultural land, and a revenue could be derived, yet until so applied, the court holds it is not the subject of taxation.   So this property (which is mining property and taxed as such, and the taxes paid) could be, at least the surface, applied to other purposes, but, until such application is made, it is not subject to taxation other than for mining purposes under the Constitution and legislation thereunder.   (Sec. 2500, Revised Codes.)

The appellants urge that the various rights of way, highways, sewers, *etc.,* should be considered as a use by the plaintiff of its property for other than mining purposes, but if these rights were not accorded voluntarily by the plaintiff, they could be secured by the public through the power of the law, eminent domain, and while there is evidence that some of this ground in controversy has been used as a dumping ground, it has not been used as such by the plaintiff.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to obtain a decree declaring null and void an assessment and tax levied in pursuance thereof by the authorities of the defendant city, upon property belonging to plaintiff and situated within the corporate limits of the city, and perpetually enjoining the defendant Daniel Shovlin, the city treasurer, from enforcing the collection of the tax by sale of the property.   The trial court granted the relief demanded.   The defendants have appealed from the decree and an order denying their motion for a new trial.

Patent to the Barnard placer mining claim was issued by the United States to Anthony W. Barnard and George McCausland on November 15, 1875.   The claim covers an area of 34.75 acres, lying along Missoula gulch, which extends from north to south, immediately west of the city as originally surveyed and platted. For several years after the patent was issued the mine was

profitably worked for placer gold. When the deposits were so far exhausted as to render this character of mining unprofitable, Anthony W. Barnard, who in the meantime had become the sole owner, caused a portion of the claim to be subdivided into blocks and lots and to be made an addition to the city as the Barnard Addition. The lots in this addition have heretofore been sold, Barnard reserving the mineral rights. The addition covers the central portion of the claim, leaving portions of it to the north and south as reserves for mining purposes, or to be devoted to other uses. The plaintiff subsequently became the successor to all of Barnard's rights. Lands to the west owned by other persons were also subdivided and made additions to the city, with the result that at the present time the southern portion of the claim, an irregular area of several acres, is bounded on the north, east and west by lots occupied by buildings. A fair understanding of the situation may be gained by reference to the diagram found in *Barnard Realty Co.* v. *City of Butte,* 48 Mont. 102, 136 Pac. 1064, with the accompanying explanatory statement. The area designated "Barnard placer," extending from the alley on the north to and south of Silver street, is the property involved in this controversy. The entire area of the claim as originally patented was assessed by the county assessor for the year 1912 as placer mining property at $2.50 per acre. Subsequently the assessor, at the instance of the city authorities, again assessed the area in controversy at a valuation of $19,000, upon the theory that it had an independent value to this amount and for use as city lots. In the first assessment the plaintiff was named as the owner; in the second Anthony W. Barnard was named as the owner. Both assessments were extended by the county clerk upon the county assessment-roll and upon the duplicate delivered by him to the city treasurer as a basis for the levy of city taxes. The plaintiff paid the amount of the tax levied upon the first assessment, but refused to pay that levied upon the second, and, when the city treasurer proceeded to advertise and sell the property as delinquent, brought this action. Two questions have been submitted for decision, *viz.,* whether the

second assessment and the tax levied in pursuance of it were authorized by law, and whether injunction is the proper remedy.

[1]   Section 2 of Article XII of the Constitution specifically declares all property, with certain exceptions, subject to taxation.   The same provision permits the legislature in its discretion to exempt other property devoted to certain purposes.   The following section (3) provides as follows: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims shall be taxed as provided by law."   Section 2500 of the Revised Codes is substantially an enactment of this provision in the form of statute.

The purpose had in view by the convention in formulating the provision of the Constitution was to bring into the class of taxable property mines and mining claims, and to provide a method by which the owners of them might be compelled to bear their equitable proportion of the expense of government.   Theretofore this species of property had generally been exempt. (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386.) Recognizing the fact that such property is not generally susceptible of profitable use unless the deposits therein are extracted and put into commercial form, and in order to encourage the work of profitable development by protecting it against exactions which might prevent this result, it was deemed that the owner of a mining claim would fully acquit himself of his obligation

to the public by paying a tax: (1) Upon the acreage at the price paid to the United States; (2) upon the machinery used in mining and surface improvements, *etc.*, upon or appurtenant to the claim, which have a value independent thereof; and (3) upon the net proceeds of the product. So long as the claim is used and held exclusively for mining purposes, the owner of it is not required to bear any other burden; but when the property, having by its location acquired a value for some independent use, is devoted by the owner to such use, it becomes at once subject to taxation at that value as is other real estate, to be ascertained by the assessing officer just as he ascertains the value of other land for the purpose of taxation. By devoting it to the new use, the owner, so to speak, creates an estate which, in the eye of the law, is regarded as independent of the original estate and is subject to taxation as such. It will be noted, however, that two conditions must concur to justify the imposition of the additional burden; *viz.*, the surface ground, or some part thereof, must be used for other than mining purposes, and it must have an independent value for that purpose. When these conditions concur, but not otherwise, the owner must assume the additional burden.

While it is the rule that he who alleges that his property is exempt from taxation must sustain the burden of establishing the exemption, the provision in question not being an exemption provision, but really a revenue measure apportioning to the owners of mining claims what the convention deemed to be their just proportion of the public burden (*Northern Pac. Ry. Co.* v. *Mjelde, supra*), before the additional burden can be imposed, the taxing authorities must ascertain that the conditions authorizing its imposition in fact exist. In *Hale* v. *Jefferson County*, 39 Mont. 137, 101 Pac. 973, was involved the question whether a ditch appurtenant to a placer mining claim and used to convey water upon it to work it had a value independent of the claim, and was therefore subject to taxation upon the basis of such value. It was held that the burden was upon the taxing authorities to establish such value. The rule was recognized and ap-

plied in the earlier case of *Murray* v. *Hinds,* 30 Mont. 466, 76 Pac. 1039. The question at issue in that case was whether a tax levied upon a portion of the surface of a mining claim which had been subdivided into blocks and lots conforming to the streets and alleys of the city of Butte, and held for sale as opportunity offered, was valid. Upon the facts adduced showing this condition, this court held that it was. The court said: "Merely claiming a portion of the premises as reserved for mining purposes, and at the same time disclosing a state of facts absolutely inconsistent with the basis of their (plaintiffs') contention, places them in the position of having adopted a subterfuge to escape paying taxes on the property." The platting of the property for the purpose of putting the lots upon the market for sale and selling them as there was demand for them was sufficient to show an actual use and an independent value for that purpose. This conclusion was clearly correct; for such a use, at least so far as concerned the surface of the claim, was inconsistent with any possible intention on the part of the owner to use it thereafter for mining purposes. It was entirely competent for the owner of the claim to treat the surface right as a separate interest from that represented by the mineral reserved beneath, and sell it to others if he chose to do so. (*Northern Pac. Ry. Co.* v. *Mjelde, supra.*) The interest so held was property and subject to taxation upon the same footing exactly as if the title to the land had been acquired for agricultural purposes.

We shall not enter into a detailed examination of the evidence. [2] It is not disputed that the area of the Barnard placer in controversy has an independent value for town-site purposes. This attribute it has in common with every foot of land within the limits of the city of Butte, including many mining claims. This alone, however, is not sufficient to make it subject to the burden sought to be imposed upon it. As heretofore stated, before the burden can be lawfully imposed in any case, the surface must have been devoted to an independent use. The evidence does not disclose such a use of the area in dispute. While

it does furnish a basis for an inference that it may be the purpose of plaintiff at some future time to plat it into blocks and lots and put them upon the market, this has not been done, nor has it heretofore been occupied or used for any purpose. It is true that portions of the surface have been filled in by other parties with the consent of the plaintiff. Missoula Gulch has for many years been used as a dumping ground for waste dirt taken from excavations within the city. Other portions of the surface rendered uneven by excavations during the process of placer mining have been leveled off. It is also true that Silver street has been extended over the southern portion of it. Again it is true that a storm sewer has been extended through it by the city from north to south, and that other similar improvements have been installed for the accommodation of lot owners to the north and east. With the exception of Silver street, which was opened by plaintiff's consent, all these improvements have been installed without plaintiff's consent, or that of any of its officers. With reference to them it may be said that all of them might have been installed even against the consent of plaintiff, the city acquiring the right of way through the property by virtue of condemnation proceedings. On the other hand, it is not disputed that in this portion of the claim there are silver-bearing lodes which have been worked with some profit in past years, and which, Anthony W. Barnard testified, it is the intention to work in the future if silver reaches such a price in the market as to justify it. He stated further that, though in recent years the plaintiff had been frequently solicited to sell the property to persons who desired to plat it and put it upon the market, it had consistently refused to sell and held it as a reserve for mining purposes whenever circumstances would permit its use for this purpose. If such is the intention, as the trial court found, the tax sought to be imposed is wholly unauthorized and illegal. The most that can be said of the evidence touching the present or future intended use is that it does not decisively preponderate against the finding of the trial court, and hence must be accepted by this court as conclusive.

Contention is made that this action cannot be maintained, for the reasons that it is not alleged in the complaint nor shown by [3] the evidence that plaintiff appeared before the board of county commissioners while sitting as a board of equalization, and made objection to the assessment, and that the remedy provided by section 2743 of the Revised Codes, as amended by the Act of 1909 (Laws of 1909, c. 135), is exclusive.  It is true that the complaint does not allege that the plaintiff appeared before the board and made timely objection to the assessment, nor is it disclosed by the evidence that it did so.  It is sufficient to say in this connection however, that if the taxing authorities undertake to levy a tax not authorized by law, or upon property not subject to be taxed, their action is without jurisdiction and void. (*Clark* v. *Maher,* 34 Mont. 391, 87 Pac. 272.)  It is not necessary to cite authorities to sustain the assertion that the right of the owner of property to relief by injunction is not in any wise affected by his failure, either upon notice by the assessor (amended section 2743, *supra*) or by the board itself (Rev. Codes, sec. 2581), to make timely objection.  The assessment being wholly illegal, because without authority, its validity may be questioned by any available method.  The same may be said as to the exclusive character of the remedy provided by amended section 2743, *supra*.  It is true section 2745 declares that the remedy provided by the amended section *supra,* "shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded, except in unusual cases where the remedy hereby provided is deemed by the court to be inadequate."  Notwithstanding this declaration, when the tax or the proceeding resulting in the levy of it is wholly illegal, as was pointed out in *Montana Ore Pur. Co.* v. *Maher,* 32 Mont. 480, 81 Pac. 13, the remedy by injunction is available.  In this case it was said: "A consideration of sections 4023 (Rev. Codes, sec. 2741) and 4026 (Rev. Codes, sec. 2745) leads us to believe that the phrase 'irregularly levied or demanded' was used by the legislature advisedly, and as prescribing the limits wherein

the statutory remedy is exclusive, as distinguished from those cases of illegal taxes the collection of which may be restrained by injunction. In other words, if the action of the assessor or board of equalization was such that the tax complained of is manifestly void under any circumstances, injunction will lie to restrain its collection; but, if the error complained of is only an irregularity on the part of the assessor, the board of equalization, or the treasurer which may be subject to explanation so as to cure the apparent defect, or, in other words, where the tax complained of is not necessarily void under all circumstances, then the remedy provided by sections 4024 (Rev. Codes, sec. 2742) and 4025 (Rev. Codes, sec. 2744), namely, payment under protest and an action to recover back, is exclusive, except in those unusual cases mentioned in section 4026.'' (See, also, *Cobban* v. *Hinds*, 23 Mont. 338, 59 Pac. 1, and *Western Ranches, Ltd.*, v. *Custer County*, 28 Mont. 278, 72 Pac. 659.)

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

