EARL M. CRANSTON ET AL., PLAINTIFFS AND APPELLANTS, *v.*
MUSSELSHELL COUNTY ET AL., DEFENDANTS AND RE-
SPONDENTS.

No. 11790.
Submitted March 9, 1970.
Decided Sept. 8, 1970.
Rehearing Denied April 16, 1971.
483 P2d 289.

Berger, Anderson & Sinclair, Richard W. Anderson (argued),
Billings, for plaintiffs and appellants.

Anderson, Symmes, Forbes, Peete & Brown, Benjamin N.
Forbes (argued), Billings, for defendants and respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered
the Opinion of the Court.

From a summary judgment for the defendants entered in
the district court of the fourteenth judicial district, Mussel-
shell County, plaintiffs appealed.

Stipulated facts in this case are relatively brief. By a conveyance on January 31, 1961, plaintiffs received one-half of the mineral rights and, "the right to ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas and other minerals" in land owned by Frieda L. Suter. Defendant Musselshell County made a tax assessment against plaintiff's right of entry, and plaintiffs paid the assessment under protest. Action in the district court was brought by plaintiffs to recover the taxes paid, but the district court denied recovery based on the Court's reasoning in Northern Pacific Ry. Co. v. Musselshell County, 54 Mont. 96, 169 P. 53.

The inquiry presented on appeal is whether or not a right of entry granted for the purpose of exploring and developing a mineral right can be taxed as an independent entity of value.

Northern Pacific Ry. Co. v. Musselshell County, supra, decided the question of whether a prior owner's reservation of minerals and right of entry to mine or remove minerals constituted property subject to taxation. With reference to the right of entry, this Court said at p. 108, 169 P. at p. 56:

"The right reserved to the use of the surface is of substantial value and may be availed of at any time * * *. This necessarily detracts from the value of the land to the plaintiff's grantee, and to this extent it is an interest in the land itself, and is properly the subject of taxation."

This 1917 case decreed that a reservation of a right of entry could be taxed, but it did not speak of a right of entry conveyed, rather than reserved. The distinction is decisive and has been recognized as such by the legislature.

Section 84-301, R.C.M.1947, captioned, "Classification of property for taxation," was enacted by the legislature to designate classes of property for taxation. Class One provides:

"The annual net proceeds of all mines and mining claims after deducting only the expenses specified and allowed by

section 84-5403; also where the right to enter upon land, to explore or prospect, or dig for oil, gas, coal or mineral is *reserved* in land by any person or corporation, the surface title to which has passed to another, the assessor and the state and county boards of equalization shall determine the value of the right to enter upon said tract of land for the purpose of digging, exploring, or prospecting for gas, oil, coal or minerals, and the same shall be placed in this classification for the purpose of taxation." (Emphasis supplied.)

It should be noted this section was originally enacted as a part of Sec. 1, Chap. 51, Laws of 1919, which read:

"Section 1. For the purpose of taxation the taxable property in this state shall be classified as follows:

"Class One. The annual net proceeds of all mines and mining claims, after deducting only the expenses specified and allowed by Section 2565 of the Revised Codes of Montana."

Two years later this section was amended by Chapter 248, Laws of 1921, to read as hereinbefore quoted. In its present wording it has been the law of Montana for nearly fifty years and the statute particularly and exclusively specifies a right of entry by "reservation" for the purposes of taxation. No mention is made of a right of entry by "conveyance."

In Cherry Lane Farms of Montana, Inc. v. Carter, 153 Mont. 240, 249, 456 P.2d 296, 301, three axioms of legal construction were used which apply here:

(1) "The case law of this state long ago established that in construing statutes the intention of the legislature is to be followed, if possible, and they must be construed in reference to the subject matter and objects which prompted and induced the legislature to act."

(2) "In considering a tax statute it has been the long settled rule that where a taxing statute is susceptible of two constructions any reasonable doubt as to persons or property intended to be within a particular tax should be resolved in favor of the taxpayer and against the taxing authority."

(3) "It is well established that when the terms of a statute are plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing for this Court to construe."

The Constitution of the State of Montana has been construed as favoring the exploration and development of minerals under the title "Revenue and Taxation", Article XII, Sec. 3.

In 1909, a case arose concerning a water ditch which was used to service mining claims, Hale v. County of Jefferson, 39 Mont. 137, 101 P. 973. There Jefferson County attempted to tax the water ditch which existed as an easement for the benefit of the owner of the mining claims. The claim owner did not own land over which the water ditch ran, and he resisted the attempted taxation. With regard to the easement, this Court said at pp. 142, 143, 101 P. at p. 975:

"So situated and used, the value of this species of property enters as an element into the value of the *corpus* or principal estate to which it is attached or appurtenant, and bears its proportionate burden of taxation by the added taxable value which it gives to the principal estate. If it had an independent use yielding independent profit, it should be taxed according to its value for that purpose, and the value for that purpose would be determined by the amount of profit. * * * The plaintiff's interest is a mere right of way, an easement in the land over which the ditch passes, which is attached to the plaintiff's mining lands." Further on in *Hale* at p. 143, 101 P. at p. 976, the Court declared the constitutional convention's design:

"* * * was to encourage the acquisition and profitable development of mines by requiring the owners to pay taxes upon the annual net proceeds or profits only, in addition to the cost of acquisition, the water rights and ditches used in connection with them being not otherwise taxable, unless they can be shown to have an independent value by reason of profitable use for some other purpose."

The analogy is obvious and the meaning of section 84-301, R.C.M.1947 becomes more clear.

Section 67-601, R.C.M.1947 is captioned, "Servitudes attached to land" and provides:

"The following land burdens, or servitudes upon land, may be attached to other land as incidents or appurtenances, and are then called easements: * * *

· (5) The right of taking water, wood, minerals, and other things."

The statute specifies a right to take water is of the same nature as a right to take minerals, i. e., an easement appurtenant for a right of entry. Thus, the right of entry easement in the present case is similar in character to the easement in *Hale* and as easement for the right of entry, both species of property have no value independent of the dominent estate which they serve.

We must, however, return to the Court's reasoning in Northern Pacific Ry. Co. v. Musselshell County, supra. There it is said that where the surface and mineral rights are severed, and the right of entry for exploration is "reserved," that the right of entry is taxable. The legislature in 1921 first placed in Chapter 248 of the 1921 Session Laws the right to tax a "reserved" right of entry. In view of the *Hale* case and this Northern Pacific Ry. Co. v. Musselshell County case, the distinction between a "reserved" right and a "conveyed" right becomes of utmost importance. The rationale seems to be that in one situation the "reserved right" is a distinct taxable entity; distinct, that is, from the mineral interest which is taxable only on production. In the other, being the "conveyed right," the right is appurtenant to the mineral right with no independent taxable status.

That this distinction is narrow, and almost nonexistent in logic, we concede. However, historically the distinction has been recognized, as it must, to have made it constitutional

to tax the "reserved" right of entry to explore. Therefore, Musselshell County cannot tax the right of entry in the present suit.

For these reasons the judgment is reversed and the cause remanded to the district court with instructions to enter judgment for the plaintiffs.

MR. JUSTICES CASTLES, JOHN C. HARRISON and HAS-WELL, concur.